# 98 DTA 180

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL II DE BAYAMON
PANEL SUSTITUTO I**

PROVIMENTOS, INC.
Demandante-Apelante

v.

CENTRO DE RECAUDACION DE INGRESOS MUNICIPALES (CRIM)
Demandado-Apelado

Núm. KLAN-97-01133/KLCE-97-01296

San Juan, Puerto Rico, a 24 de abril de 1998

Panel integrado por su Presidenta, Juez señora Rivera de Martínez
y los Jueces señor Soler Aquino y señor Rivera Pérez

Rivera Pérez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se encuentran ante la consideración de esta Curia los recursos relacionados con el mismo caso de autos. Estos son: (a) un recurso de *certiorari* solicitando la revocación de una resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 18 de noviembre de 1997, notificada a las partes el 1 de diciembre de 1997, en la cual se declaró no ha lugar una moción presentada por la parte demandante, aquí peticionaria, solicitando se eximiera a ésta del pago de la deficiencia requerida por ley como requisito para la presentación de un recurso de apelación ante este Tribunal y que se mantuviera vigente la fianza prestada ante el Tribunal de Primera Instancia; y (b) un recurso de apelación solicitando la revocación de una sentencia emitida por ese mismo Tribunal el 25 de abril de 1997, notificada y archivada en autos copia de la misma el 25 de abril de 1997, mediante la cual se declaró con lugar la moción de sentencia sumaria presentada por la parte demandada y sin lugar la moción solicitando igual remedio presentada por la parte demandante. No estando conforme con lo resuelto por el tribunal *a quo*, acude ante nos la parte demandante, Provimentos, Inc. Expedimos el auto de *certiorari* solicitado y revocamos la resolución recurrida. En cuanto al presente recurso de apelación, se confirma la sentencia apelada.

### I

Según surge de los documentos habidos en los expedientes ante nos, los hechos que procedemos a relatar no se encuentran en controversia. La parte demandante, Provimentos, Inc., en adelante Provimentos, es una corporación organizada al amparo de las leyes de Puerto Rico, la cual tiene sus oficinas principales localizadas en el Municipio de Vega Baja. Desde el 14 de agosto de 1990, Provimentos se dedica, en parte, a porteador público de transporte aéreo, tanto de carga, como de pasajeros, para lo cual está debidamente autorizado por la Administración Federal de Aviación. ■ Dicha parte radicó sus planillas sobre la propiedad mueble correspondientes a los años 1990, 1991, 1992, 1993.

El 8 de mayo de 1996, la parte demandada, Centro de Recaudaciones de Ingresos Municipales, en adelante el CRIM, notificó a la parte demandante una determinación final de deficiencia por concepto de contribuciones sobre propiedad mueble para los años 1990, 1991, 1992 y 1993. ■ La referida deficiencia consiste en un principal adeudado, que asciende a la cantidad de $147,806.55, correspondiente a contribuciones sobre ciertos aviones, propiedad de la parte demandante, Provimentos.

El 14 de mayo de 1996, la parte demandante presentó ante la Autoridad de los Puertos de Puerto Rico un formulario ■ utilizado por dicha entidad, con el objeto de que los porteadores públicos, dedicados a los servicios de transportación aérea, soliciten la·exención contributiva que a éstos reconoce la Ley Núm. 135 de 9 de mayo de 1945, según enmendada, 13 L.P.R.A. § 194.

En cuanto a la anterior solicitud, el Director Ejecutivo de la Autoridad de los Puertos de Puerto Rico, señor Herman Sulsona, indicó a la representación legal de la parte demandante, mediante carta fechada 15 de agosto de 1996, lo siguiente:

*"Con referencia al asunto de epígrafe sobre consulta en torno a los beneficios de la Ley Núm. 135 del 9 de marzo de 1945, 13 LPRA [sic] 194, tenemos a bien indicar lo siguiente:*

*A tenor con la legislación y reglamentación aplicable, no encontramos disposición alguna que limitara su solicitud en torno a poder acogerse a los beneficios de dicha exención. Aunque la Autoridad de los Puertos no ve objeción a conceder la autorización a dicha exención, la referida compañía deberá someter toda documentación y/o evidencia que certifique su condición de porteador público aéreo y su consideración ante el Departamento de Hacienda.*

*Recomendamos se concedan los beneficios de dicha exención desde el inicio de operaciones el 14 de agosto de 1990."*

El 11 de octubre de 1996, el Departamento de Hacienda emitió un documento titulado *"CERTIFICACION"*, en el cual se asevera que la parte demandante, Provimentos, no tenía deuda contributiva alguna ante dicha agencia. Se expresa, en adición, en la referida comunicación que:

*"Además, indicamos que conforme a la legislación y reglamentación aplicable no tenemos objeción alguna a que se le conceda exención alguna a dicha Corporación [sic] desde agosto de 1990."*

Surge del expediente ante nos, que uno de los documentos que tuvo ante sí el Tribunal de Primera Instancia al considerar el caso de marras, lo fue una hoja de solicitud de servicio del CRIM, en la cual un oficial de dicha entidad, el señor Mariano Maldonado, indicó: (a) que la companía Provimentos tiene derecho a la exención que otorga la Ley Núm. 135 de 9 de mayo de 1945, *supra*; y (b) que se le reconcozca a la misma dicha exención desde el año 1990-1991 a 1999-2000. ■

El 5 de junio de 1996, Provimentos presentó ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, demanda contra el CRIM. ■ Para ello prestó la correspondiente fianza, la cual fue fijada por el CRIM en la cantidad de $223,863.35. En su demanda Provimentos: (a) alegó estar cobijado por la exención que protege a los porteadores públicos aéreos del pago de contribuciones por propiedad mueble utilizada para dichos fines; y (b) solicitó se dejara sin efecto la deficiencia en controversia ordenando la cancelación de los recibos notificados, los cuales corresponden a los años 1990, 1991, 1992 y 1993.

El 8 de agosto de 1996, el CRIM presentó contestación a la demanda de epígrafe. ■ En la misma se negó que Provimentos tuviera el beneficio de la exención reclamada, y se indicó que dicha parte no había realizado los trámites correspondientes, de forma que se entendiera como acreedor a los beneficios dispuestos por la Ley Núm. 135 de 9 de mayo de 1945, *supra*. En su contestación a la demanda, el CRIM se reservó el derecho de levantar cualquier defensa afirmativa no disponible en esos momentos o que surgiera de los procedimientos de descubrimiento de prueba.

El 3 de marzo de 1997, Provimentos radicó moción solicitando se dictara sentencia sumaria. En ésta se argumentó básicamente la falta de autoridad legal por parte del CRIM para discrecionalmente negarse a reconocer la exención contributiva alegadamente otorgada por la Autoridad de los Puertos de Puerto Rico y el Departamento de Hacienda a la compañía apelante. En apoyo de lo planteado en la referida moción, Provimentos acompañó como anejos los siguientes documentos, entre otros: (a) el certificado de porteador aéreo emitido a Provimentos por la Administración Federal de Aviación; (b) declaración jurada del Presidente de Provimentos, Inc., señor Elliot Reyes Casanova, expresando la cantidad de vuelos de acarreo realizados por dicha compañía durante los años 1990, 1991, 1992, 1993, así como los productos acarreados en los mismos; (c) la solicitud de exención que Provimentos realizara ante la Autoridad de los Puertos de Puerto Rico el 13 de mayo de 1996; (d) la carta emitida por el Director de la Autoridad de los Puertos de Puerto Rico antes transcrita; (e) certificación otorgada por el Departamento de Hacienda antes transcrita; y (f) la hoja de solicitud de servicios del CRIM realizada por el oficial de dicha entidad, señor Mariano Maldonado.

A la anterior moción de sentencia sumaria el CRIM se opuso mediante escrito y solicitó, a su vez, se dictara sentencia por la vía sumaria a su favor. Los argumentos esbozados por dicha parte en apoyo al remedio sumario solicitado giraron alrededor de un planteamiento básico. Alegó esa parte, que estando Provimentos operando como porteador público aéreo desde agosto de 1990, y habiendo sido notificado de las deficiencias objeto del presente pleito en noviembre de 1994 y enero de 1995, resulta tardía la solicitud que dicha parte realizara en mayo de 1996 a las agencias pertinentes, en busca del reconocimiento retroactivo de la exención que hoy reclama.

Así las cosas, el 25 de abril de 1997, el Tribunal de Primera Instancia, Sala Superior de Bayamón, dictó sentencia, declarando con lugar la moción de sentencia sumaria presentada por el CRIM y, consecuentemente, sosteniendo las deficiencias notificadas por ésta a la parte demandante.

Luego de que el CRIM presentara, y el Tribunal de Primera Instancia aprobara, los nuevos cómputos de contribuciones, los cuales reflejaron que la cantidad total adeudada ascendía a $215,683.70, el 22 de octubre de 1997, Provimentos radicó una moción debidamente juramentada, en

la que solicitó se le exonerara del pago de la deficiencia impugnada como requisito para apelar ante este Foro. ▇ Indicó bajo juramento dicha parte, no poseer los recursos económicos para efectuar el pago de la referida deficiencia. Adujo, sin embargo, que habiendo prestado previamente una fianza ascendente a $223,863.35, cantidad que excede la deficiencia en controversia, los intereses de la parte demandada se encuentran debidamente protegidos, por lo que procedía que el Tribunal de Primera Instancia permitiera la continuación de los procedimientos en este Foro, bajo la fianza prestada anteriormente.

El 18 de noviembre de 1997, el Tribunal de Primera Instancia declaró no ha lugar la referida solicitud sobre exoneración del pago de deficiencia para apelar ante este Tribunal. Inconforme con los dictámenes del 25 de abril de 1997 y de 18 de noviembre del mismo año, acude ante nos la parte demandante, Provimentos.

En cuanto al dictamen de 18 de noviembre de 1997, Provimentos, en su recurso de *certiorari*, señala como único error cometido por el Tribunal de Primera Instancia el siguiente:

*"Erró el Honorable Tribunal de Instancia al declarar No Ha Lugar la solicitud de exoneración del pago de deficiencia radicada por la parte Peticionaria, cuando el monto de la deficiencia determinada por el Honorable Tribunal está garantizada por una fianza, protegiéndose así los intereses de la parte demandada-recurrida y la apelación radicada plantea cuestiones sustanciales de derecho."*

De igual forma, Provimentos plantea en su recurso de apelación, que el Tribunal de Primera Instancia en su sentencia de 25 de abril de 1997, cometió los siguientes errores:

*"1) Erró el Tribunal a quo al utilizar como fundamento en su Sentencia, la defensa afirmativa de incuria a los fines de denegar la exención concedida cuando esta defensa afirmativa no fue levantada por la parte apelada en la contestación a la demanda.*

*2) Erró el Tribunal a quo al determinar que la parte apelada está facultada en ley para a su discreción, denegar o aceptar la exención contributiva otorgada por la Autoridad de los Puertos y el Departamento de Hacienda al amparo de la Ley Núm. 135, supra."*

## II

Dado a que la determinación que realice esta Curia en lo que respecta a los planteamientos procesales contenidos en el recurso de *certiorari* sería concluyente, a los efectos de la jurisdicción que este Tribunal posea para entender en los méritos del recurso de apelación, discutiremos inicialmente el señalamiento de error expuesto en el escrito de *certiorari*.

Por disposición expresa del Artículo 6.06(c) de la Ley Núm. 83 de 30 de agosto de 1991, ▇ el contribuyente que no esté conforme con una determinación final de una deficiencia notificada por el CRIM puede recurrir al Tribunal de Primera Instancia, dentro del término prescrito, siempre que el contribuyente:

*"(1) pague bajo protesta dicha deficiencia; o*

*(2)...........*

*(3) preste fianza por el monto total de la deficiencia si no estuviere conforme con dicho monto total, más los intereses sobre la misma por un (1) año adicional a razón del diez (10) por ciento anual...".*

Una vez dictada la sentencia por el Tribunal de Primera Instancia determinando la existencia de la deficiencia impugnada, el contribuyente que desee apelar la misma viene obligado a pagar la totalidad de la deficiencia determinada, según los cómputos finales sometidos por la agencia recaudadora ante el Tribunal, dentro del término dispuesto para apelar. La importancia de dicho requisito estriba en que su incumplimiento tiene el efecto de privar de jurisdicción al tribunal revisor para entender en los méritos del recurso.

En aquellos casos en que el contribuyente apelante no pueda cumplir con el requisito del pago de deficiencia, o sólo pudiese pagar parte de la misma, éste tiene a su alcance el mecanismo provisto en el Artículo 6.07 de la Ley Núm. 83 de 30 de agosto de 1991. ▪ Al amparo de esta disposición, el Tribunal Superior discrecionalmente autorizará la continuación del trámite de apelación sin que se realice el pago total de la deficiencia, luego de que el contribuyente radique ante dicho foro una copia del escrito de apelación junto con una petición jurada, exponiendo las razones por las cuales no puede realizar el referido pago y los fundamentos que acreditan que la apelación pretendida envuelve una cuestión sustancial. El referido articulado continúa señalando entonces:

*"Si el Tribunal Superior determinare que el contribuyente no puede pagar la deficiencia, o que sólo puede pagar parte de la misma, y que la apelación envuelve una cuestión sustancial, ordenará en lugar del pago total, según sea el caso,*

*(i) que la apelación siga su curso bajo la fianza prestada para acudir al Tribunal Superior si ésta fuere suficiente para responder de la deficiencia que en definitiva se determine y de sus intereses; o*

*(ii) que el contribuyente preste una nueva fianza, a satisfacción del tribunal, en cantidad suficiente para responder de la deficiencia y de sus intereses por un período razonable; o*

*(iii) que el contribuyente pague parte de la deficiencia y la parte no pagada se afiance de las formas anteriormente previstas en las cláusulas (i) y (ii) de este inciso."* ▪

Así, para que el Tribunal de Primera Instancia pueda hacer uso de cualquiera de las opciones que brindan los incisos (i), (ii) y (iii) del referido Artículo 6.07, *supra*, deberá inicialmente determinar: (a) si en efecto la parte no puede pagar la deficiencia judicialmente adjudicada; y (b) si los planteamientos a ser esbozados en el tribunal revisador, son de tal naturaleza que puedan ser considerados como envolviendo una controversia sustancial, ya sea en cuanto a las cuestiones de hecho o de derecho.

Es menester señalar, que dado el efecto que podría tener en el contribuyente la denegación de una solicitud de exoneración del pago de deficiencia para apelar, los tribunales deben ser cautelosos al resolverlas. El propósito del requerimiento de prestación de fianza en aquellos procedimientos judiciales en que se impugna una contribución, es el de garantizar el pago de la misma si mediante sentencia final y firme se determina la procedencia de ésta. Ello asegura que en tales casos los trámites judiciales no sirvan de obstáculo a la entidad recaudadora para recolectar lo que en su día se determine procedente.

En el caso de autos, la parte demandante, Provimentos, oportunamente presentó ante el foro sentenciador una petición jurada para que se le concediese autorización para gestionar la apelación sin realizar el pago total de la deficiencia, manteniéndose en vigor la fianza previamente prestada al propio CRIM, dado que la misma excedía la totalidad de la deficiencia final adjudicada. El fundamento ofrecido para lo anterior lo fue la falta de recursos económicos por parte de Provimentos. Las controversias presentadas ante esta Curia en el recurso de apelación son las siguientes: (a) la utilización del tribunal sentenciador de una defensa alegadamente renunciada, por no haber sido presentada la misma oportunamente; y (b) la determinación judicial referente a la autoridad legal que posee el CRIM para discrecionalmente no reconocer una exención contributiva otorgada.

Independientemente de la disposición que del caso de autos realicemos en sus méritos, no consideramos que los señalamientos de error de la parte demandante ante este foro sean necesariamente frívolos o superficiales. De igual forma, concluimos que habiendo la parte demandante prestado una fianza que excede la deficiencia total final aprobada por el Tribunal, los intereses del CRIM se encuentran debidamente salvaguardados. Lo anterior nos obliga a concluir que el Tribunal de Primera Instancia abusó de su discreción al denegar la solicitud de exoneración de pago de deficiencia para apelar presentada por el demandante, y de mantener vigente la fianza ya prestada durante el trámite apelativo. El error señalado en el recurso de *certiorari* fue cometido.

Determinado lo anterior, pasamos en este momento a atender los méritos del recurso de apelación de epígrafe. El primer señalamiento de error contenido en el mismo ataca la utilización por parte del

Tribunal de Primera Instancia de una defensa afirmativa alegadamente renunciada por la parte demandada.

Indica el demandante, Provimentos, que no habiendo sido presentada la defensa de incuria en su contestación a la demanda, la parte demandada la renunció, suceso que impedía al Tribunal considerarlo como fundamento para disponer del caso.

No hay duda, en cuanto a que la doctrina de incuria es materia de defensa afirmativa. Por tanto, ésta debe ser planteada en la primera alegación respondiente oportunamente presentada por el demandado, según lo prescribe la Regla 10.2 de las de Procedimiento Civil. ■■ De otra forma, se entiende que dicha parte renunció a ella.

Nuestro más Alto Foro ha señalado, sin embargo, que cuando una defensa afirmativa surja, para el beneficiado por ella, de los procedimientos de descubrimiento de prueba, la misma podrá ser planteada por esa parte a la brevedad posible, siempre que se demuestre que ha sido diligente y que no se cause mayor perjuicio en términos de una solución justa, rápida y económica a la parte adversa.
■■

Según surge del expediente del caso de autos, Provimentos solicitó a la Autoridad de los Puertos de Puerto Rico la exención, que ante los tribunales reclama, el día 13 de mayo de 1996. La demanda presentada por dicha parte fue radicada el 5 de junio de 1996 y contestada por el CRIM el 8 de agosto de 1996. Si bien es cierto que en la contestación a la demanda la defensa de incuria no fue levantada, es igualmente cierto que en la demanda no se hace alusión alguna a que se estuviera tramitando la referida solicitud. La parte demandada, por su parte, en el párrafo nueve (9) de las defensas afirmativas contenidas en su alegación responsiva expresamente señala que: *"La parte demandada se reserva el derecho de levantar cualquier otra defensa afirmativa no disponible en estos momentos o que surja del descubrimiento de prueba."*

Del expediente del presente recurso no surge el momento exacto en que el CRIM advino en conocimiento de que el caso de autos no trataba de una exención no solicitada, sino de una exención solicitada luego de recibida por el contribuyente demandante la notificación final de la deficiencia. No obstante, en la minuta de la vista sobre conferencia con antelación al juicio, celebrada el 5 de diciembre de 1996, se indica que la representación legal de la parte demandante expresó haber solicitado la exención en el año 1996, retroactiva a los años 1990 al 1995, inclusive. De igual forma surge de la referida minuta, que en cuanto a los procedimientos de descubrimiento de prueba la parte demandada estaba en espera de una contestación a un pliego de interrogatorio y requerimiento de admisiones previamente cursado a la demandante, el cual aún no había sido contestado.

Como mencionáramos anteriormente, de la demanda del caso de autos no surgía que la demandante, Provimentos, estuviese realizando los trámites de la solicitud de la exención contributiva en controversia ante las agencias pertinentes. De igual forma, la demanda nunca fue enmendada para incluir una alegación específica que indicara el trámite que se estaba realizando para la concesión de la exención o, posteriormente, la exención contributiva que alegadamente fue concedida. Resultaría completamente irrazonable exigir del CRIM haber enmendado su contestación a la demanda, para conformarla a una demanda que nunca incluyó alegación alguna que diera lugar a levantar la defensa en controversia.

Cabe señalar, además, que no consideramos que al momento en que la referida defensa fue levantada, esto es, en la oposición a la moción de sentencia sumaria, haya perjudicado a la parte demandante en términos de una solución justa, rápida y económica del remedio solicitado. Más aún, si tomamos en cuenta que a partir de la celebración de la conferencia con antelación al juicio, el 5 de diciembre de 1996, el Tribunal de Primera Instancia, otorgó un término de sesenta (60) días para que el trámite administrativo ante el CRIM finalizara. Dicho término finalizó el 15 de febrero de 1997. La parte demandada en el próximo trámite procesal habido, esto es, la moción en oposición a sentencia sumaria y solicitud de sentencia sumaria, procedió a presentar la defensa de incuria en controversia. En los hechos muy particulares del presente pleito no podemos concluir que la referida defensa haya sido renunciada por la parte demandada.

Tratándose el caso de autos sobre una impugnación de una deficiencia por alegadamente existir una exención que la hace improcedente, debemos comenzar señalando que en el campo del derecho tributario es norma conocida que las exenciones contributivas se tienen como *"gracias"* legislativas. Estas son derogaciones del poder del soberano, por lo que no deben ser extendidas más allá de los términos expresos y exactos del estatuto que las otorga. En dichos casos toda duda debe ser resuelta en contra de la existencia de la exención. ■■

En cuanto a la interpretación que debe darse a los estatutos que contienen exenciones contributivas se ha indicado, que deberá ser *"conforme a su letra, esto es, sin menospreciar la misma en pos de alcanzar su propósito o espíritu"*. ■■ En consonancia con la anterior normativa, se ha señalado que los esquemas tributarios se caracterizan por su apego a la letra de la ley. ■■

La disposición legal en que la parte demandante se apoya para sostener sus contenciones es la Ley Núm. 135 de 9 de mayo de 1945, *supra*, según enmendada. Prescribe la misma, en lo que nos atañe, lo siguiente:

*"Toda persona natural o jurídica que se dedique como porteador público a servicios de transporte aéreo queda exenta, en cuanto a tales servicios, del pago de toda contribución estatal, local y municipal, de cualquier nombre o naturaleza que ésta sea, sobre todas sus propiedades muebles o inmuebles que actualmente posea o adquiera en lo sucesivo, incluyendo todos los impuestos y arbitrios sobre equipo y materiales, pero sin incluir arbitrios sobre combustibles...*

*Asimismo estarán exentos de contribución sobre la propiedad mueble los aviones y equipo relacionado con éstos, arrendados y poseídos por un porteador público dedicado al servicio de transporte aéreo siempre que se establezca a satisfacción del Secretario de Hacienda que tal propiedad está siendo utilizada para tal fin."*

La disposición antes transcrita no contiene la especificación de un término para que los contribuyentes realicen los trámites pertinentes en busca del beneficio que en ella se otorga. Se trata, por tanto, de una de aquellas situaciones en que no habiendo el legislador determinado el período de tiempo que posee una parte para llevar a cabo una actuación, es aplicable a la misma la doctrina de incuria.

Incuria ha sido definida como la dejadez o negligencia en el reclamo de un derecho, que junto con el transcurso del tiempo y circunstancias que puedan perjudicar a la parte adversa, opera como un impedimento en una corte en equidad. ■■ Dicha doctrina puede ser levantada como defensa cuando no existe un término establecido por ley o reglamento para realizar determinada acción. ■■ En la aplicación de la doctrina de incuria como defensa, debe atenderse principalmente: (a) la justificación, si alguna, para la demora incurrida; (b) el perjuicio causado o desventaja en que se ha colocado a una de las partes; y (c) los intereses públicos y privados envueltos. ■■ Respecto a la figura jurídica de incuria, en *Pueblo v. Tribunal Superior*, 81 D.P.R. 904 (1960) se indicó:

*"Sobre todo es preciso tener en cuenta los méritos y demás circunstancias del caso específico, ya que la doctrina de incuria sigue vinculada a la idea fundamental de la equidad: se acude a la "razón" y a la "conciencia" para encontrar soluciones justas...".*

Indica la parte demandante, Provimentos, que en el caso de autos no es aplicable la doctrina de incuria, dado a que la parte demandada no ha expuesto el perjuicio que ha sufrido por razón del transcurso del tiempo. No obstante, la propia parte demandante, en su solicitud de sentencia sumaria, señala que la razón aducida por el CRIM para no reconocer la exención reclamada porque se establecería un precedente para la agencia, carece de méritos. En cuanto a la parte demandante, resulta importante apuntar al hecho que desde los comienzos del presente pleito, la misma ha fallado en presentar alegación alguna que pueda ser interpretada como explicación que justifique el porqué de la tardanza incurrida por ésta en la tramitación de la solicitud de la exención en controversia.

Desde el año 1990, momento en que la demandante, Provimentos, comenzó operaciones como porteador público aéreo, tuvo a su alcance la oportunidad de realizar los trámites correspondientes

para disfrutar de la exención contributiva objeto del presente pleito. Sin embargo, nada hizo. En los años 1994 y 1995, el CRIM notificó preliminarmente a Provimentos la existencia de la deficiencia contributiva que hoy impugna, y a pesar de ello la demandante se mantuvo cruzada de brazos. No es hasta que finalmente, en mayo de 1996, la agencia demandada notifica a la demandante la deficiencia final, que ésta comienza a hacer las gestiones correspondientes para que se le reconozca la exención a la cual posiblemente tenía derecho desde hacía seis (6) años atrás. Provimentos, por su parte, no ha brindado explicación para tan excesiva dilación. No albergamos duda, en cuanto a que la parte demandante actuó con extremo retardo y descuido en la reclamación del beneficio contributivo en discusión.

Por otro lado, consideramos que la razón expuesta por el CRIM al negarse a reconocer la referida exención, a saber, el precedente que se establecería para la agencia, es de gran peso. Sería irrazonable, en casos como el de autos, requerir del CRIM la inversión del tiempo, esfuerzo, dinero y recursos que conlleva la tramitación de notificaciones de deficiencias, para que finalmente el contribuyente que ha actuado negligente y descuidadamente en la reclamación de una exención quede en la misma posición que aquellos que actúan con premura y diligencia al procurar el mencionado beneficio. Ello, sin duda, no sólo envuelve un perjuicio sustancial al CRIM, sino que afectaría, a su vez, los intereses públicos envueltos. No podemos premiar actuaciones que constituyen pereza, dejadez y desidia. Resolver de otra forma sería promover las mismas, siendo el único perjudicado por ello, el interés público que hay envuelto en la recolección de las contribuciones que lleva a cabo el CRIM.

Nos vemos así obligados a determinar que no erró el Tribunal de Primera Instancia al aplicar la doctrina de incuria al caso de autos. Dentro de las circunstancias del presente recurso no se nos ha demostrado que haya habido justificación para dejar transcurrir el término de seis (6) años antes de procurar el beneficio reclamado. De igual forma, consideramos que se causaría grave perjuicio al CRIM y al interés público, si se permite que se reconozca el beneficio de una exención reclamada con un extremo retraso. Ello suscitaría la indeseable situación de que los contribuyentes que tienen a su alcance los beneficios de la exención en controversia, gestionen la misma únicamente cuando y porque la agencia ha reclamado la contribución y se le ha notificado una deficiencia. El derecho que pudo tener la parte demandante a que se le considerara cierta propiedad exenta, en forma retroactiva, del pago de las contribuciones notificadas en la deficiencia impugnada, quedó derrotado por el fundamento de incuria. ■■■

En su segundo señalamiento de error, la demandante indica que es equivocada la determinación que el Tribunal de Primera Instancia realizara respecto a la autoridad legal que posee el CRIM para discrecionalmente negarse a reconocer una exención contributiva otorgada por la Autoridad de los Puertos de Puerto Rico y el Departamento de Hacienda al amparo de la Ley Núm. 135 de 9 de mayo de 1945, *supra*.

Luego de estudiar detenidamente la sentencia apelada, no hemos hallado en la misma la determinación que la parte demandante adjudica al tribunal sentenciador haber realizado. Si bien el Tribunal de Primera Instancia en su dictamen discute sobre la Ley Núm. 80 de 30 de agosto de 1991, ■■■ y la transferencia que la misma hiciera de los poderes, funciones y obligaciones del Departamento de Hacienda al CRIM, dicho foro claramente expuso que la referida transferencia fue en cuanto a *"la tasación, notificación, determinación y cobro de la contribución sobre la propiedad mueble e inmueble"*. ■■■ Nada más dispone la sentencia apelada en cuanto al tema.

La disposición que del presente pleito realizó el Tribunal de Primera Instancia, al igual que la que hoy realiza esta Curia, se encuentra apoyada en el fundamento de incuria. El Tribunal de Primera Instancia nada dispuso en cuanto a los planteamientos esbozados por la parte demandante en el segundo señalamiento de error. Este Tribunal no revisará determinaciones no realizadas por el Tribunal de Primera Instancia. ■■■

## IV

Por los fundamentos antes expuestos, se expide el auto de *certiorari* solicitado y se revoca la resolución recurrida. En cuanto al recurso de apelación se refiere, se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 180**

**1.** Apéndice VII, pág. 31, del recurso de apelación.

**2.** Indica la demandada, que el 17 de noviembre de 1994 el CRIM notificó a Provimentos una determinación preliminar sobre deficiencia correspondiente a los años 1990, 1991; 1992. El 24 de enero de 1995 la agencia demandada cursó otra notificación preliminar sobre deficiencia, esta vez relativa al año 1993.  - -

**3.** Apéndice VII, págs. 34-36, del recurso de apelación.

**4.** Apéndice VII, pág. 41, *Ibid.*

**5.** Apéndice V, págs. 19-20, *Ibid.*

**6.** Apéndice VI, págs. 21-22, *Ibid.*

**7.** A dicha solicitud la parte demandante indica haber acompañado copia del recurso de apelación a ser presentado ante este Tribunal.

**8.** 21 L.P.R.A. § 5206(c).

**9.** 21 L.P.R.A. sec. 5206.

**10.** *Ibid.*

**11.** 32 L.P.R.A. Ap. III, R. 10.2.

**12.** *Texaco P.R., Inc. v. Díaz*, 105 D.P.R. 248 (1976).

**13.** *Martínez Suris v. Colón Muñoz*, 131 D.P.R. ___ (1992), **92 J.T.S. 99,** opinión de 30 de junio de 1992.

**14.** *Martínez Suris v. Colón Muñoz, supra.*

**15.** *Ibid.*

**16.** *Colón Torres v. Autoridad de Acueductos*, 143 D.P.R. ___ (1997), **97 J.T.S. 60,** opinión de 15 de mayo de 1997; *Aponte v. Srio. Hacienda, E.L.A.*, 125 D.P.R. 610, (1990).

**17.** *Pueblo v. Valentín Burgos,* 135 D.P.R. ___ (1994), **94 J.T.S. 21,** opinión de 4 de marzo de 1994.

**18.** *Colón Torres v. Autoridad de Acueductos, supra; Pueblo v. Valentín Burgos, supra.*

**19.** *J.R.T. v. Puerto Rico Tel Co.*, 107 D.P.R. 76 (1978).

**20.** 21 L.P.R.A. § 5801 y ss.

**21.** Apéndice I, pág. 5, del recurso de apelación.

**22.** *Autoridad de las Fuentes Fluviales v. Corte,* 61 D.P.R. 935 (1946); *Trabal Morales v. Ruiz Rodríguez,* 125 D.P.R. 340 (1990).