José Rosa, sustituído por su Sucesión, compuesta por su viuda Elvira Pérez y sus hijos legítimos, Ventura Rosa Pérez y José Rosa Pérez, demandantes y apelantes, *v.* Sucesión de Don Manuel Jiménez Cruz, compuesta de su viuda Florentina Jiménez y los hijos de éstos Garbiel, Concepción y Manuel Jiménez Jiménez, etc., demandados y apelados.

Número 10724.

*Sometido:* 5 de marzo de 1954.  *Resuelto:* 2 de diciembre de 1954.

*Bolívar Pagán,* abogado de los apelantes;  *Miranda Esteve & Martínez Álvarez, Jr.,* abogados de los apelados.

El Juez Asociado Señor Belaval emitió la opinión del Tribunal.

El 10 de octubre de 1899, doña Teresa Rosa Urvelo, vecina de Aguas Buenas, otorgó testamento ante el notario don José Abelardo Cajas y Machado, dejando como su único heredero a don Manuel Jiménez Cruz. Doña Teresa Rosa Urvelo tenía al momento de testar una hermana, doña Antonia Rosa Urvelo, y es la Sucesión de un hijo de esta hermana la que impugna el testamento a favor de don Manuel Jiménez Cruz. La testadora falleció el día 31 de octubre de 1899 y desde esa fecha, primero, don Manuel Jiménez Cruz y después, su sucesión, han estado poseyendo ciertas fincas rústicas y urbanas que originalmente pertenecían a la testadora doña Teresa Rosa Urvelo.

El día 27 de enero de 1926, don José Rosa, el hijo natural reconocido de doña Antonia Rosa, por conducto de su abogado don Arturo O'Neill, formuló por primera vez, ante la anterior Corte de Distrito de San Juan, la demanda civil núm. 820 sobre nulidad de testamento y reivindicación, contra la Sucesión de don Manuel Jiménez Cruz, (t.179). Después de los incidentes preliminares de rigor los procedimientos se paralizaron hasta el 22 de noviembre de 1933, en que aparece una moción del abogado del demandante don Arturo O'Neill, solicitando se dejara sin efecto el archivo del caso, (t.179) y (t.180). Nada más se hizo en el referido caso hasta el 2 de agosto de 1948, en que aparece en autos una moción de otro abogado, don Diego O. Marrero, renunciando la representación del demandante, sin que constara de los autos ninguna renuncia de la anterior representación profesional y ninguna sustitución de la nueva representación profesional, (t.180).

El día 8 de marzo de 1949, don José Rosa, esta vez por conducto de su abogado don Bolívar Pagán, formuló por segunda vez ante la anterior Corte de Distrito de Caguas, la demanda civil núm. 2882 sobre reivindicación y otros extremos, contra la Sucesión de don Manuel Jiménez Cruz, (t.134), que es la que sirve de origen a la apelación que está ante nos.

El día 24 de febrero de 1950 se le notificó por el Secretario del Tribunal, a las partes de la primera acción ante la ante-

rior Corte de Distrito de San Juan, que en vista de no haberse hecho gestión posterior alguna en la primera demanda, se había solicitado el archivo por diligencia de oficio, concediéndosele a las partes el término usual para comparecer a mostrar causa por la cual no debiera dictarse sentencia de caducidad por abandono, (t.180). No habiendo comparecido ninguna de las partes, el día 24 de marzo de 1950 se dictó por la anterior Corte de Distrito de San Juan, sentencia declarando la caducidad del caso por abandono, (t.180.). Posteriormente al día 24 de marzo de 1950, posiblemente en algún día del mes de septiembre de 1950, (t.185), el demandante en la acción ante la anterior Corte de Distrito de San Juan, por conducto de su abogado don Bolívar Pagán, compareció ante el Tribunal de Distrito de Puerto Rico, Sección de San Juan, sucesor de la anterior Corte de Distrito de San Juan, solicitando se dejara sin efecto la sentencia de caducidad por abandono, demostrando el demandante de la primera acción bajo juramento, las razones que tuvo para no comparecer a oponerse a la diligencia de oficio del Secretario, (t.180). El día 17 de noviembre de 1950, el Tribunal de Distrito de Puerto Rico, dictó una resolución declarando sin lugar la moción para que se dejara sin efecto la sentencia de caducidad por abandono, por dos fundamentos: (1) por haberse establecido fuera del término de seis meses, a contar desde la fecha en que la sentencia fué dictada, de acuerdo con la Regla 60 (*b*) de las Reglas de Enjuiciamiento Civil de Puerto Rico y de la norma sentada por este Tribunal en el caso de *Great American Insurance Co.* v. *Corte*, 67 D.P.R. 564 y (2) por estar pendiente ante el Tribunal de Distrito de Puerto Rico, Sección de Caguas, una causa de acción sustancialmente idéntica, numerada R-2882, entre las mismas partes, o sea, la segunda demanda radicada el 8 de marzo de 1949 a que hemos hecho referencia, (t.180 y 181). De la resolución denegando dejar sin efecto la sentencia de caducidad por abandono no apeló don José Rosa, y por lo tanto, debemos considerar final y concluyente la sentencia de caducidad por abandono.

El día 24 de febrero de 1951, los demandados doña Florentina Jiménez viuda de Jiménez, don Manuel Guillermo, doña Concepción, y don Félix, Jorge, Gabriel Jiménez y Jiménez radicaron dentro de la segunda acción civil iniciada ante la anterior Corte de Distrito de Caguas, entonces Tribunal de Distrito de Puerto Rico, Sección de Caguas, una moción para que se dictara sentencia sumaria, alegando principalmente que de las propias alegaciones de la demanda y de las declaraciones juradas que se acompañaban, resultaba, a la fecha de la radicación de la demanda en este segundo caso, hacía ya más de cincuenta años que los demandados y sus antecesores en título habían estado, como en la actualidad estaban, en la posesión, quieta, pública y pacífica, y sin interrupción, de los inmuebles a que se refería la demanda, habiendo adquirido los demandados tales inmuebles en virtud de la prescripción extraordinaria.

El día 13 de marzo de 1951 el demandante don José Rosa radicó dentro de la segunda acción civil, una oposición contra la moción de los demandados para que se dicte sentencia sumaria, alegando principalmente que los demandados no se encontraban en posesión quieta, pública y pacífica por el término de prescripción, ya que según aparecía de los autos, la acción en este caso se había iniciado en el año 1926, interrumpiéndose así cualquier supuesto término de prescripción. Sin duda, el demandante se refería a la primera acción civil formulada por el demandante en la anterior Corte de Distrito de San Juan bajo el núm. 820 en la cual ya se había dictado sentencia de caducidad por abandono. En oposición alegó también que el demandante tenía un título inscrito como sucesor y causahabiente de la causante Teresa Rosa Urvelo.

El día 7 de febrero de 1951 la co-demandada doña Isabel Jiménez González, hija del primer matrimonio de don Manuel Jiménez Cruz, y como tal, también parte de la Sucesión junto a su madrastra y a sus hermanastros, radicó dentro de la segunda acción civil, otra moción solicitando sentencia sumaria, alegando principalmente que por haberse formado su hi-

juela como heredera, de otras propiedades de su causante que no eran las reclamadas por el demandante, debía dictarse sentencia declarando sin lugar, en cuanto a ella, la demanda enmendada.

El día 24 de mayo de 1951, el demandante don José Rosa radicó dentro de la segunda acción civil, una moción solicitando sentencia sumaria, alegando principalmente que no existía controversia real entre las partes, en cuanto al derecho de propiedad del demandante sobre los bienes objeto de este pleito y en cuanto a la nulidad del supuesto testamento abierto aludido en el mismo, el cual testamento es claramente nulo, entre otras razones, por el mismo no haber sido inscrito debidamente en el registro correspondiente y porque el mismo fué otorgado ante una persona que en el momento del otorgamiento no estaba en funciones del cargo de notario.

El Tribunal de Distrito de Puerto Rico, Sección de Caguas, por voz de su ilustrado Juez señor Carlos Santana Becerra dictó sentencia declarando con lugar la moción de sentencia sumaria presentada por los demandados con vista a los documentos que acompañaban a dicha moción, y sin lugar la demanda de reivindicación y otros extremos radicada en la anterior Corte de Distrito de Caguas bajo el núm. 2882, por los siguientes fundamentos principales: (1) por haber estado los demandados y su causante en la posesión material de los bienes por un período mayor de 30 años ininterrumpidamente, pública y pacíficamente, en concepto de dueño, (2) por resultar aplicable el art. 1859 del Código Civil de Puerto Rico relacionado con el art. 1860; (3) por no haberse interrumpido natural ni civilmente la posesión de los demandados; (4) por no afectar al título por prescripción de los demandados el hecho que los bienes estén aún inscritos a nombre de la causante Teresa Rosa Urvelo.

Contra dicha sentencia el demandante y apelante hoy sustituído por su sucesión, ha formulado el siguiente señalamiento de errores; (1) el tribunal sentenciador cometió error al decidir que los demandados, por prescripción adquisitiva

extraordinaria, y contra el título inscrito del demandante, eran dueños de los bienes inmuebles en litigio; (2) el tribunal sentenciador cometió error al desestimar la moción de sentencia sumaria parcial presentada por el demandante.

Hemos escrutinizado las admisiones contenidas en las alegaciones y la prueba documental unida a las mociones sobre sentencia sumaria, y estamos conformes con la conclusión de hecho del Juez sentenciador en todo lo relativo a que los demandados y su causante han estado en posesión material de los bienes aquí envueltos, por un período mayor de 30 años, ininterrumpidamente, pública, y pacíficamente, en concepto de dueños.

En una reciente decisión de este Tribunal, *Dávila* v. *Córdova*, 77 D.P.R. 136, analizamos extensamente los efectos legales de la prescripción adquisitiva extraordinaria, fijando cada uno de los conceptos envueltos en la institución de derecho, estableciendo la siguiente conclusión: para que se produzca la prescripción adquisitiva extraordinaria que establece el art. 1859 del Código Civil de Puerto Rico, debe exigirse por nuestros tribunales prueba de los siguientes extremos: (1) una posesión continuada durante treinta años, (2) tolerada por el dueño del inmueble, (3) por haber el prescribiente entrado en posesión del inmueble sin autorización, permiso o licencia otorgados por el dueño o en virtud de contrato celebrado por el dueño, (4) cuya posesión ha mantenido el poseedor en concepto público de dueño, o sea, de acuerdo con la creencia colectiva de la comunidad en que vive y no de acuerdo con la creencia propia que pueda tener el poseedor de ser él dueño del inmueble, (5) pública y pacíficamente, (6) sin interrupción natural, o sea, sin abandono de la cosa por el poseedor por más de un año o sin interrupción civil, o sea, en virtud de diligencia judicial o notarial de la cual no haya desistido el reclamante o haya caducado en virtud de diligencia de oficio o haya sido fallada en su contra, y siempre y cuando que no haya existido por parte del poseedor ningún reconocimiento expreso o tácito del derecho del

dueño o que el poseedor haya renunciado expresa o tácitamente a su título de prescripción por alguna causa que resulte eficaz en derecho para tal renuncia, después de consumada la prescripción extraordinaria.

Los dos fundamentos principales de la argumentación del demandante y apelante son: (1) que la posesión la tiene de jure el que tenga su título inscrito en el Registro, (2) y que en este caso, la adquisición extraordinaria fué interrumpida en virtud de la acción radicada en la anterior Corte de Distrito en el año 1926.

En cuanto al primer punto, en el caso antes citado de *Dávila* v. *Córdova*, nos expresamos en los siguientes términos: "parece ser que la teoría de la demandada y apelada durante el juicio fué, que teniendo la Sucesión como tiene un título inscrito a nombre de su causante, ello era suficiente para derrotar el derecho posesorio de la demandante y apelante, de acuerdo con el art. 1849 de nuestro Código Civil que dispone: "contra un título inscrito en el registro de la propiedad no tendrá lugar la prescripción *ordinaria* del dominio o derechos reales en perjuicio de tercero, sino en virtud de otro título igualmente inscrito, debiendo empezar a correr el tiempo desde la inscripción del segundo." Esto, desde luego, no es así en la prescripción extraordinaria de treinta años: Sentencia del Tribunal Supremo de España de 24 de enero de 1907: 106 Jur. Civ. 172, (ed. de la Editorial Reus S. A. de Madrid), (1922), "El artículo 1949 [1849 nuestro] del Código se refiere a la prescripción *ordinaria* del dominio o derechos reales, al disponer que ésta no tendrá lugar contra un título inscrito en el Registro de la Propiedad sino en virtud de otro título igualmente inscrito; no siendo, por tanto, aquél aplicable aunque se prescindiera de la condición de tercero que exige, *en el caso* de tratarse de la prescripción de treinta años a que se contrae el artículo 1959 [1859 nuestro]": 7 Oyuelos, Digesto 864, último párrafo, (ed. de la Imprenta de Julio Cosano), (1932).

558

En su alegato el apelante cita varias sentencias del Tribunal Supremo de España para sostener que tiene la posesión el que tiene título inscrito. Dichas sentencias no son aplicables a este caso. El Tribunal Supremo de España, en varios de esos casos, cita el art. 41 de la Ley Hipotecaria española en el sentido de que, quien tiene título inscrito se presume poseedor. Este art. 41 no tiene equivalente en la Ley Hipotecaria nuestra ya que tiene su origen en España en una Ley de 1909: 2 Morell-Comentarios a la Legislación Hipotecaria 798, (segunda ed. de la Editorial Reus S. A. de Madrid), (1927). En una nota al calce de la pág. 803 de la citada obra de Morell, refiriéndose a la presunción de posesión establecida en el art. 41, se comenta: "sobre la índole de esta preaunción dice un ilustre comentarista lo siguiente: 'Si la posesión consiste principalmente en un señorío de hecho sobre las cosas, en un sometimiento efectivo de la misma a la voluntad humana, la llamada posesión registral o tabular, basada sobre la inscripción de una finca o de un derecho real en el Registro a favor de persona determinada, no es verdadera posesión. La titularidad emanente del asiento no implica potestad sobre la cosa ni ejercicio del derecho. De aquí que pueda aparecer como poseedor jurídico una persona no inscrita.' "

■ En cuanto al segundo punto, ya hemos visto que la acción civil núm. 820 sobre nulidad de testamento y reivindicación formulada por el demandante y apelante señor José Rosa, contra la Sucesión de don Manuel Jiménez Cruz, el día 27 de enero de 1926 en la anterior Corte de Distrito de San Juan, fué archivada mediante sentencia de caducidad por abandono el día 17 de noviembre de 1950, ¿Interrumpió el término de prescripción la primera acción civil caducada?

La ley aplicable a este aspecto de la cuestión litigiosa son los arts. 1845 y 1846 del Código Civil de Puerto Rico, que disponen: el primero: "la interrupción civil se produce por la citación judicial hecha al poseedor, aunque sea por mandato de tribunal o juez incompetente" y el segundo: "se conside-

rará no hecha y dejará de producir interrupción la citación judicial: (1) Si fuere nula por falta de solemnidades legales, (2) Si el actor desistiere de la demanda, o dejare caducar la instancia, (3) Si el poseedor fuere absuelto de la demanda."

Comentando la segunda disposición del art. 1946 del Código Civil de España, equivalente a la segunda disposición del art. 1846 de nuestro Código, dice Manresa: "Lo mismo podemos decir en cuanto al núm. 2.° de dicho artículo, o sea respecto del caso en que el actor desistiere de la demanda o dejare caducar la misma. Excusado es decir que el desistimiento de la demanda borra y hace desaparecer todos los efectos de la misma, quedando las cosas en el mismo estado que antes tenían, como si no hubiere sido presentada o como si no se hubiere deducido la reclamación objeto de ella. Sobre este resultado del desistimiento no puede haber duda ni discusión alguna, puesto que es la consecuencia natural y lógica de todo apartamiento del pleito. Mediante él la ley establece la ficción de que la reclamación no ha existido, y por eso, habiendo por desistido de su demanda al demandante, no tiene que resolver sobre la procedencia o improcedencia de lo pretendido en la misma, y no tiene otra trascendencia ni otro efecto el juicio promovido que la imposición de las costas al actor.

"Fuera de esa declaración, no queda, a partir del desistimiento de la demanda, nada que tenga relación con la contienda judicial provocada con su presentación, y como no existe la controversia, no puede considerarse interrumpida ni en suspenso la posesión en que se hallara el poseyente, porque no es contradicha ni impugnada dicha posesión, y porque, por esa ficción de la ley a que antes nos hemos referido, la misma considera que no ha habido contradicción ni impugnación alguna.

"Lo que hemos dicho del desistimiento de la demanda es aplicable a la caducidad de la instancia, desconocida en nuestras antiguas leyes procesales e introducida en la vigente,

como una plausible y necesaria novedad para poner término a los inconvenientes que en el antiguo régimen se lamentaban, por medio de la acción bienhechora que de *oficio* atribuye dicha ley a los Jueces y Tribunales. Las consecuencias de la caducidad son las mismas que hemos expuesto al hablar del desistimiento, y por idéntica razón de derecho deben ser iguales también las consecuencias jurídicas en ambos casos." 12 Manresa 845–846, (quinta ed. del Instituto Editorial Reus).

Puede haber dudas sobre si estamos ante un caso de caducidad por diligencia de oficio, o de un caso donde el poseedor fuere absuelto de la demanda, ya que el ilustrado Juez sentenciador de la primera acción civil, pasó sobre los méritos de una moción solicitando se dejara sin efecto la sentencia de caducidad por abandono. La situación sería la misma. Comentando la tercera disposición del art. 1946 del Código Civil de España equivalente a la tercera disposición del art. 1846 de nuestro Código, continúa Manresa: "En cuanto al tercero de los casos expuestos en el art. 1.946, la explicación es más breve y sencilla. Tenemos ya dicho que por virtud de la citación judicial del poseedor, hecha a virtud de la interposición de la demanda, se interrumpe civilmente la posesión para los efectos de la prescripción. El citado no pierde por ello el hecho de la posesión, no cesa en el disfrute de la cosa poseída, y por eso, aunque transcurriese más de un año, no se producirán los resultados de la interrupción natural. Sigue poseyendo y disfrutando lo que es objeto del litigio; pero la ley, por una ficción legal, supone lo contrario, y esa interrupción supuesta no es absoluta como la natural, sino relativa; no es definitiva, sino interina y condicional, *para el solo caso de vencer en el juicio el que promovió la demanda que motivó la citación productora de dicha interrupción*. Consecuencia de esto es que, si por el contrario, fuera vencido el actor en la contienda judicial, se tendrá por no producida la interrupción, o como dice el Código, se considerará no hecha la citación y dejará ésta de producir la interrupción; y

en dicho caso se unirá el tiempo transcurrido durante ella al ganado anteriormente, como si la posesión hubiera continuado de hecho y de derecho sin solución de continuidad alguna, puesto que ninguno de los requisitos que exige la posesión, el material y el intelectual, resultan menoscabados en lo más mínimo, y, por tanto, *todo el tiempo que mediare desde la citación judicial hasta la sentencia firme del juicio, se entenderá corrido para la prescripción.*" 12 Manresa 848 y 849, ed. citada.

*Debe confirmarse la sentencia apelada.*